UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ZW USA, INC.                                    )
                                                )
            Plaintiff,                          )
                                                )
       vs.                                      )          Case No. 4:14-CV-1500-CEJ
                                                )
PWD SYSTEMS, LLC,                               )
                                                )
            Defendant.                          )

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff's motion for partial summary judgment and defendant's motion for summary judgment, pursuant to Fed. R. Civ. P. 56(a). Responses have been filed, and the issues are fully briefed.

## I. BACKGROUND

Plaintiff ZW USA, Inc. and defendant PWD Systems, LLC are competitors in the dog waste disposal industry. Both companies market dog waste disposal bags, which they sell to a variety of customers: individual dog owners, wholesalers, contractors, dog waste removal services, veterinary clinics, apartment complexes, property managers, home owners associations, airports, marinas, and campgrounds. They also sell dog waste disposal bag stations, which are dispensers from which dog owners may obtain the bags.

It is undisputed that dog owners benefit from retrieving the disposal bags by using only one hand and with minimal distraction or effort from the primary task of controlling a leashed dog. The purchasers of these bags also benefit from reducing the incidence of mistakenly dispensed and unused bags, as may happen if a hurried user reaches for a bag and accidentally takes more than one from the dispenser. Hence, the parties agree, a market exists for dog waste disposal dispensers and bags that are designed to permit retrieval of only one bag at a time with one hand.

Among the basic types of dog waste disposal bags are "roll bags" and "wicket bags," which are also called "header bags." The primary difference between header bags and roll bags is the dispensing mechanism they use. Roll bags are packaged in a single roll, with perforations to facilitate tearing a single bag from the roll as it is dispensed from the dispensing station. Evidence has been submitted that some roll bags and dispensers are designed to allow the user to tear an individual bag from the roll with a "single pull" of the hand (*i.e.*, in "one pull"). [Doc. #79-7 at 2–14, 17–21][1] Other designs of roll bags and dispensers allegedly do not include this "one-pull" feature. *See id.*

Wicket bags are hung by the top from prongs or hooks inside or on a dispenser. Like some versions of roll bags, all wicket bags appear to be designed to allow a user to retrieve a single bag with one pull of the hand. The dispute in this case centers on plaintiff and defendant's marketing and sale of competing wicket bags that both employ this "one pull" or "single pull" feature.

Doing business as Zero Waste USA, plaintiff markets and sells wicket bags on its company-branded website and on several other websites. According to plaintiff, the company began to market and sell wicket bags under the name "ONEPUL" by September 9, 2010, and under the name "SINGLPUL" by October 30, 2010. [Doc. #85 at 6] Plaintiff has marketed wicket bags using several variations of those

---

[1]Plaintiff takes issue with defendant's evidentiary submission of third-party websites, suggesting they are unauthenticated and have not been admitted. But evidence need only be "admissible" at trial to be considered at summary judgment. *Crews v. Monarch Fire Prot. Dist.*, 771 F.3d 1085, 1092 (8th Cir. 2014); *see* Fed. R. Civ. P. 52(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Plaintiff has not challenged the authenticity of the websites or the accuracy of the statements regarding the companies and products advertised. Indeed, those websites would be admissible at trial through the proper authenticating witnesses to show that third-parties advertise dog waste disposal bags with "one pull" and "single pull" features. Nor has plaintiff disputed that third-parties in fact sell such products. Because the admissibility and accuracy of the websites and the underlying products advertised is not genuinely in dispute, the Court will consider them here.

terms: SINGLPUL® BAGS, SINGLPul® Bags, SINGLPul® Header Bags, ONEPul® bags, ONEPul® Bags, ONEPul® Bags, and ONEPul® DOG WASTE BAGS. [Doc. #79-5 at 2–6]. Plaintiff has also marketed its dog waste disposal bag dispensing system as the ONEPul® Bag Dispenser. *Id.* It also claims to have "originated the ONE-PULL STRAP technology" that "restricts dispensing" dog waste disposal bags "to ONLY **one-bag-at-a-time!**" [Doc. #79-4 at 2–5] (emphasis in original).

On October 22, 2013, plaintiff applied for federal trademark protection inthe terms ONEPUL and SINGLPUL. [Doc. #84-4 at 7–10] Neither party submitted copies of plaintiff's applications to register the trademarks. On August 5, 2014, the United States Patent and Trademark Office (USPTO) granted plaintiff's applications to register ONEPUL (#4,581,881) and SINGLPUL (#4,581,879). *Id.* Plaintiff filed this suit shortly after the USPTO issued the registrations.

The registrations cover the use of such marks "without claim to any particular font, style, size, or color" for "fixed dispensers of metal for pet waste bags" and for "plastic bags for disposing of pet waste." *Id.* The USPTO accepted that both marks were first used in commerce on October 30, 2010. *Id.* It is undisputed that the USPTO granted plaintiff's applications without first requiring plaintiff to submit proof that ONEPUL or SINGLPUL had "become distinctive of" plaintiff's "goods in commerce," pursuant to 15 U.S.C. § 1052(f).

The defendant was incorporated in February 23, 2012, and it does business as BagSpot. In May 2012, defendant began purchasing wicket bags from a third-party supplier.[2] By 2013, it began selling wicket bags and roll bags on its website

---

[2]The parties submitted evidence regarding the status of defendant's supplier and other suppliers, specifically with regard to plaintiff's alleged prior or existing relationship with those third-parties. None of that evidence is material to the dispositive issues here, and the Court therefore will not address the disputes over it. *See* Fed. R. Civ. P. 56(a).

and by phone. Defendant is not licensed or authorized to use plaintiff's trademarks.

On its website and in its advertisements defendant refers to the wicket bags it markets and sells as "one pull" or "one-pull" bags. It has used various formulations of those words to refer to the wicket bags: BagSpot® One-Pull Bags, BagSpot One-Pull Bags, BagSpot One Pull Bags, One Pull Bags, ONE-PULL BAGS, One-Pull Bags, One-Pull bags, One- Pull bags, One- Pull style, One-pull style bags, One-Pull style Bags, and Single pull bags. [Docs. ##79-1 at 2; 82-2 at 5–6, 25–44] (all terms as in original). These bags are advertised as fitting "most header/wicket/one-pull style dispensers." [Doc. #82-2 at 6]

None of those terms appear on defendant's bags themselves, which are instead branded with defendant's phone number, website, and trademarked BagSpot® label. *Id.* Though plaintiff contends the subject terms are all "identical," plaintiff has not argued—and no evidence was submitted—that defendant has ever marketed its bags using plaintiff's trademarked terms ONEPUL or SINGLPUL, or any variant in capitalization thereof. Nor has plaintiff alleged or introduced evidence that defendant has ever employed any form of the unhyphenated, single-word terms "onepull" or "singlepull."

Rather, plaintiff primarily notes the alleged similarities between the trademark ONEPUL and the defendant's use of "One Pull" in advertisements and on its website. In response to defendant's motion for summary judgment, plaintiff did not submit any relevant data, survey evidence, expert witness depositions or affidavits, or a deposition, declaration, or affidavit from anyone not affiliated with the parties.[3] Plaintiff states that it has spent more than $1.5 million for advertising

---

[3]Plaintiff submitted only excerpts of depositions despite the Court's order that the parties must "submit complete transcripts of all deposition testimony that is cited in support of or in opposition to a

4

the ONEPUL and SINGLPUL trademarks since it first began using them. Defendant contests that figure, because it appears to represent plaintiff's entire advertising expenditures over several years, rather than advertising unique to the subject trademarks. In any event, the Court assumes here that plaintiff's statement as to the amount it has spent on advertising the trademarks is accurate. Plaintiff also introduces evidence of its sales and revenues from ONEPUL and SINGLPUL bags.

As other evidence of its claims, plaintiff points to an excerpt from Ruth Springer's deposition. Springer explained that on defendant's website, several references to "One Pull Bags" are highlighted hyperlinks that direct website patrons to the portion of the webpage where consumers may purchase those bags. [Doc. #92-3 at 25] Those hyperlinks to "One Pull Bags" on defendant's website are capitalized so that customers will "notice" them, according to Springer. *Id.*

Additionally, defendant has purchased the keyword "Zerowaste" from Google Adwords, which means that a user's Google search for plaintiff's company will also identify defendant's website as a potentially relevant link. Defendant has also paid Google to display advertisements for its products among the banners that appear in the search results when users query for plaintiff's company. It is undisputed here that such practices are common in online advertising.[4]

Plaintiff further alleges that defendant has "taken multiple customers directly from" plaintiff, including the cities of Brentwood, Olivette, and Washington,

---

motion." [Doc. #29] The Court further ordered: "Excerpted portions of a witness's deposition testimony will not be considered by the Court absent a showing of good cause for not submitting the entire transcript." *Id.* Plaintiff has not shown (or even attempted to show) good cause for not submitting the full depositions. Nevertheless, the Court will consider the deposition excerpts because doing so does not alter the outcome and does not prejudice the defendant.

[4]*See, e.g.*, *Select Comfort Corp. v. Baxter*, No. CV 12-2899 (DWF/SER), 2016 WL 158516, at *3–5 (D. Minn. Jan. 13, 2016) (collecting sources, describing in detail Google's system of keyword searches and pay-per-click, "organic search," and "display" advertising, and granting in part and denying in part summary judgment on trademark infringement claims).

Missouri, and a homeowners association in Virginia. Viewed in the light most favorable to plaintiff, the evidence shows that those entities were previously customers of plaintiff until they began purchasing defendant's products. That, plaintiff argues, proves those customers' decisions to change bag suppliers were "caused by" or "because of" defendant's use of the "One Pull" terms. But plaintiff has introduced no evidence why those customers switched suppliers in the competitive market for dog waste disposal products. There is no evidence in the record from those customers relevant to their decisions to switch bag suppliers, nor was evidence submitted that those customers ever saw defendant's advertisements, its website, or called its phone number.

Finally, plaintiff admits it has no evidence of actual consumer confusion between its ONEPUL trademark and defendant's marketing of "One Pull" bags. Instead plaintiff argues that "consumers do not recognized the term 'one-pull' as describing wicket bags." It offers no evidence to support this, only conjecture and speculation from its own employees and its counsel.

Plaintiff asserts the following claims: (1) infringement of a federally registered trademark under the Lanham Act, 15 U.S.C. § 1114; (2) Missouri common law trademark infringement; (3) Missouri common law unfair competition; and (4) violation of Missouri's anti-dilution statute, Mo. Rev. Stat. § 417.061. It seeks an injunction forbidding defendant from infringing on its marks, an accounting of defendant's profits from the infringement and unfair competition, treble damages, and attorney's fees.

Defendant asserts counterclaims for cancellation of plaintiff's trademarks and for declaratory relief, based on two alternative grounds: (1) the trademarks were improvidently registered, because they are not distinctive or (2) the trademarks

6

were fraudulently registered, where plaintiff claimed a date of first use of October 30, 2010, for both marks but it did not begin using ONEPUL or SINGLPUL in commerce until at least 2012. Defendant also seeks a declaration of non-infringement based on the absence of evidence to support the elements of plaintiff's claims or, alternatively, because plaintiff's claims are barred by the defenses of acquiescence, estoppel, laches, unclean hands, or waiver.

## II.  LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts.  *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  *United of Omaha Life Ins. Co. v. Honea*, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).  Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

### A. **SINGLPUL**

Defendant moves for summary judgment on all of plaintiff's claims related to the SINGLPUL trademark. It contends that plaintiff has produced no evidence from which a reasonable juror could conclude that defendant has infringed upon, diluted, or unfairly competed with plaintiff with respect to that trademark. Indeed, plaintiff did not respond to defendant's arguments or produce any evidence as to its claims regarding SINGLPUL. Therefore, the Court will grant defendant's motion for summary judgment on all of plaintiff's claims premised on the SINGLPUL trademark. Defendant's use of "single pull" (in all its variants) is non-infringing. The Court need not determine whether defendant's trademark cancellation or other counterclaims and defenses succeed with respect to SINGLPUL.

### B. **ONEPUL**

"A 'trademark' is 'any word, name, symbol, or device, or any combination thereof—used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.'" *Lovely Skin, Inc. v. Ishtar Skin Care Products, LLC*, 745 F.3d 877, 882 (8th Cir. 2014) (quoting 15 U.S.C. § 1127). "The Lanham Act grants the 'owner of a trademark used in commerce' the right to apply for registration of its trademark on the Principal Register" by filing an application with the USPTO. *Id.* (quoting 15 U.S.C. § 1051). As discussed, ONEPUL is a registered trademark.

The Lanham Act also establishes a civil remedy for infringement of a registered trademark. 15 U.S.C. § 1114. Section 1114 provides in pertinent part:

> Any person who shall, without the consent of the registrant[,] . . . use in commerce any reproduction . . . or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action . . . .

*Id.* § 1114(a)(1); *see Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 760 (8th Cir. 2010) (describing § 1114 claims).

To prevail on a claim of infringement of a registered trademark under 15 U.S.C. § 1114(1), a plaintiff must establish: (1) that it owns a valid, protectable mark, (2) that the defendant has used a mark in commerce without the plaintiff's consent; and (3) that there is a likelihood of confusion between the plaintiff's mark and the defendant's mark. 15 U.S.C. § 1114(1); *see B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 389 (8th Cir. 2009).

"If a plaintiff succeeds in making out a prima facie case of trademark infringement," then "the defendant may offer rebutting evidence to undercut the force of the plaintiff's evidence on" the "element of consumer confusion" or "any" other element, or "raise an affirmative defense to bar relief even if the prima facie case is sound, or do both." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 120 (2004); *see also* 15 U.S.C. § 1115(b) (listing several defenses). Indeed, "merely rebutting the plaintiff's case on confusion" will "entitle the defendant to judgment, good faith or not." *KP Permanent Make-Up*, 543 U.S. at 120.

### (1) Standards Governing Validity

To succeed on the first element of its prima facie case of infringement,

plaintiff must prove that the ONEPUL trademark is valid. For a "mark that is invalid cannot be infringed." *Fair Isaac Corp. v. Experian Info. Sols., Inc.*, 650 F.3d 1139, 1151 (8th Cir. 2011) (citation omitted). To be a valid trademark, "a mark must be capable of distinguishing the applicant's goods from those of others." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (citing 15 U.S.C. § 1052). "Marks are often classified in categories of generally increasing distinctiveness" as: "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Id.* "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Id.*

"In contrast, generic marks—those that refer to the genus of which the particular product is a species—are not registrable as trademarks." *Id.* (quotation marks, bracketing, and citations omitted). "[A] registered mark may be canceled at any time on the grounds that it has become generic." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 193–94 (1985) (citations omitted). A defendant "has the burden of proving by a preponderance of the evidence that [a] registered mark[] [is] generic and that [its] registration[] should thus be cancelled." *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1011 (8th Cir. 2011). "To determine whether a registered mark has become [a] generic name," courts "consider 'the primary significance of the registered mark to the relevant public rather than purchaser motivation.'" *Id.* (quoting 15 U.S.C. § 1064(3)). For example, the Eighth Circuit has held that the capitalized phrase "Brick Oven" is a generic identifier for a type of pizza, and thus not entitled to protection. *Schwan's IP, LLC v. Kraft Pizza Co.*, 460 F.3d 971, 974 (8th Cir. 2006).

"The dictionary definition of a word is an appropriate and relevant indication of the ordinary significance and meaning of words to the public." *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1327 (8th Cir. 1984). But "a word need not appear in all dictionaries in order to be found generic. Whether a term is generic is determined by actual common usage." *Id.* "A consumer survey is the most definitive evidence of genericness, but absent such a survey, a court may consider indirect evidence, such as use by defendants, the trademark owner, or a third-party." *Baxter*, 2016 WL 158516, at *6. "Where the proponent of trademark status itself uses the term as a generic name, it is strong evidence of genericness." *Id.* at *7 n.6 (quotation marks and citation omitted).

"A merely descriptive mark . . . describes the qualities or characteristics of a good or service, and this type of mark may be registered only if the registrant shows that it has acquired secondary meaning, *i.e.*, it has become distinctive of the applicant's goods in commerce." *Park 'N Fly*, 469 U.S. at 193–94 (quotation marks and citations omitted); *see Two Pesos*, 505 U.S. at 767–69. "A term is descriptive if it conveys an immediate idea of the ingredients, qualities or characteristics of the goods" in question. *Frosty Treats Inc. v. Sony Comput. Entm't Am. Inc.*, 426 F.3d 1001, 1004 (8th Cir. 2005) (quotation marks and citation omitted). In *Frosty Treats*, for example, the court held that "the phrase 'Frosty Treats' [was], at best, descriptive" of the plaintiff's "business of selling frozen desserts out of ice cream trucks." *Id.* at 1005. The Eighth Circuit explained that the term "'Frosty Treats' convey[ed] an immediate idea of the qualities and characteristics of the goods that" the plaintiff sold, and that, "no imagination, thought, or perception [was] required to reach a conclusion as to the nature of its goods." *Id.* The Eighth Circuit has similarly held the term "350–850" is merely descriptive of the "qualities or

characteristics" of credit scores.  *Fair Isaac*, 650 F.3d at 1147–48.

"Secondary meaning is used generally to indicate that a mark or dress has come through use to be uniquely associated with a specific source."  *Two Pesos*, 505 U.S. at 784 n.4 (quotation marks and citation omitted); *see Lovely Skin*, 745 F.3d at 882 (same).  "To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself."  *Two Pesos*, 505 U.S. at 784 n.4 (quotation marks and citation omitted).  The Supreme Court has explained that "trademark law requires a demonstration of secondary meaning only when the claimed trademark is not sufficiently distinctive of itself to identify the producer . . . ."  *Id.* at 767.

The secondary meaning requirement as to descriptive marks exists because a business cannot "pluck a word" from "the general vocabulary and appropriate it to [its] exclusive use no matter how much effort and money [it] may expend in the attempt . . . ."  *Duluth News-Tribune, a Div. of Nw. Publ'ns, Inc. v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1100 (8th Cir. 1996) (quotation marks and citation omitted).  "This right to describe is the reason that descriptive terms qualify for registration as trademarks only after taking on secondary meaning as distinctive of the applicant's goods, with the registrant getting an exclusive right not in the original, descriptive sense, but only in the secondary one associated with the markholder's goods."  *KP Permanent Make-Up*, 543 U.S. at 122 (quotation marks and citations omitted).  As a leading treatise in the field of trademark law explains:

> The combination of two or more admittedly descriptive elements as a composite mark may result in a composite which is nondescriptive. That is, the commercial impression of a composite mark may be arbitrary or suggestive even though its separate parts are descriptive. The composite may be more than the mere sum of its parts.

. . . Common words in which no one may acquire a trademark because they are descriptive or generic may, when used in combination, become a valid trademark.

2 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 11:26 (4th ed. 2016); *see also id.* § 11:31 (explaining that the "slight misspelling of a word will not generally turn a descriptive word into a nondescriptive mark"). Examples of such composite marks include SUGAR & SPICE, MOUSE SEED, and SEASON-ALL, all of which are non-descriptive marks imbued with secondary meaning, but which are composed of generic or descriptive terms that are not themselves eligible for trademark protection. *Id.* § 11:26; *see also Duluth News-Tribune*, 84 F.3d at 1097 (holding that "although the mark 'Duluth News-Tribune' merits some level of protection, the shorthand 'News-Tribune' merits none").

### (a) Effect of Registration

Notwithstanding the standards governing trademark validity, the Lanham Act provides that the USPTO's registration of a trademark is admissible as, "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services." 15 U.S.C. § 1115(a). "A mark registered on the Principal Register is presumed to be valid, 15 U.S.C. § 1057(b), and the presumption of validity is a strong one." *Lovely Skin*, 745 F.3d at 882 (quotation marks and citation omitted). But the act of registration does "not preclude another person from proving any legal or equitable defense or defect . . . which might have been asserted if such mark had not been registered." 15 U.S.C. § 1115(a). "[A] mark's registered status is only an evidentiary tool, and the fact of registration does not affect the plaintiff's ultimate burden of proof in an infringement action." *Gen. Mills, Inc. v. Kellogg Co.*,

824 F.2d 622, 626 (8th Cir. 1987) (citing 15 U.S.C. § 1057).

It is a complete defense to a trademark infringement claim to rebut the presumption that a registered trademark is valid, by proving the trademark is generic or merely descriptive and devoid of secondary meaning—*i.e.*, that the registration was issued in error and is subject to cancellation. *See Park 'N Fly*, 469 U.S. at 194. But the "party seeking cancellation must overcome" the "presumption" created by registration "by a preponderance of the evidence . . . . The party seeking to cancel registration of a mark always bears the burden of persuasion, that is, the ultimate burden of proving invalidity of the registration by a preponderance of the evidence." *Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 1358 (Fed. Cir. 2009); *see Lovely Skin*, 745 F.3d at 883.

Defendant contends that ONEPUL's registration should be cancelled, either because the mark is generic or merely descriptive and without secondary meaning, or because the mark was fraudulently obtained. The Court must first address whether the ONEPUL trademark is contestable or incontestable before turning to those arguments, as it affects the scope of the available defenses.

### (b) Contestability

The avenues available to rebut the presumption that a registered trademark is valid narrow with the passage of time in certain circumstances. *See* 15 U.S.C. § 1065. The Lanham Act provides that an owner's right to use a registered "mark in commerce for the goods or services on or in connection with which" it "has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce[] shall be incontestable . . . ." *Id.* Where a registered trademark has become incontestable, a defendant may no longer assert the affirmative defense of cancellation "on the grounds that the mark

is merely descriptive." *Park 'N Fly*, 469 U.S. at 205. But even an incontestable registered trademark is subject to cancellation—and affords a complete defense to infringement claims—if it is either generic at the time of registration or becomes generic thereafter. *Id.* at 201 (citations omitted); *see* 15 U.S.C. §§ 1064(3), 1065(4). The Lanham Act also, "under certain circumstances, permits the nontrademark use of descriptive terms contained in an incontestable mark." *Park 'N Fly*, 469 U.S. at 201.

As relevant to ONEPUL, the parties dispute whether that trademark has achieved incontestability. Two points definitively settle that question of law. First, by its plain text the Lanham Act provides that the five-year period of use in commerce required to achieve incontestability begins to accrue only "subsequent to the date of" the trademark's "registration" with the USPTO. 15 U.S.C. § 1065. Second, incontestability cannot vest while a "proceeding involving said rights" is "pending in . . . a court and [is] not finally disposed of . . . ." *Id.* § 1065(2). The ONEPUL trademark has not achieved incontestability because, *inter alia*, it was only registered on August 5, 2014. Additionally, this litigation is ongoing, and commenced less than a month after the accrual period began. Therefore, the ONEPUL trademark is not incontestable and plaintiff's allegations of infringement may be defended against by raising all potential arguments to rebut the presumption of validity.

### (c) Inherent Distinctiveness

In *Two Pesos*, the Supreme Court explained that because the Lanham Act "requires secondary meaning only as a condition to registering descriptive marks, there are plainly marks that are registrable without showing secondary meaning. These same marks, even if not registered, remain inherently capable of

distinguishing the goods of the users of these marks." 505 U.S. at 772. Accordingly, when the USPTO registers a trademark without first requiring an applicant to show proof of secondary meaning, pursuant to 15 U.S.C. § 1052(f), it may be presumed the agency determined that the mark in fact is at least suggestive and therefore protectable without such proof, *i.e.*, inherently distinctive. *See Lovely Skin*, 745 F.3d at 882; *see also JDR Indus., Inc. v. McDowell*, 121 F. Supp. 3d 872, 885 (D. Neb. 2015); McCarthy, *supra*, § 11:43 ("Almost all courts interpret the Lanham Act to mean that . . . when the USPTO registers a mark without requiring evidence of secondary meaning ('acquired distinctiveness'), it is presumed to be inherently distinctive.").

It is undisputed that the USPTO accepted plaintiff's application and registered the ONEPUL trademark without requiring plaintiff to show proof of secondary meaning. Defendant has not challenged the agency's determination of that question of fact here. *See Lovely Skin*, 745 F.3d at 884 (noting that the "federal officials who register a mark have some expertise in assessing if it is entitled to registration," holding that a registered mark is "entitled to a strong presumption of validity," and explaining that a "finding of acquired distinctiveness," *i.e.*, secondary meaning, "is a question of fact" the USPTO may decide (citation omitted)).

Further, even if the Court were to revisit that determination, defendant has not met either "the initial burden to establish a prima facie case that" the ONEPUL trademark was not distinctive "at the time of [its] registration[]" or "the ultimate burden of persuasion to prove that" plaintiff's "trademark[] [is] invalid by a preponderance of the evidence." *Id.* at 884–85. No evidence has been submitted suggesting that ONEPUL has independent meaning. *See WSM*, 724 F.2d at 1325 ("How a particular word has been used and how it has been understood by the

public is a question of fact."). On this evidence, ONEPUL is not a word in the English language or in any other. Defendant submitted no evidence that the term ONEPUL is generic for dog waste bags or a particular genus of dog waste bag that can be dispensed with a single movement of the hand. *See Two Pesos*, 505 U.S. at 768.

Nor is ONEPUL descriptive. It "does not convey an immediate idea of the ingredients, qualities, or characteristics" of the dog waste disposal bags or dispensers plaintiff sells. *Mountain Mktg. Grp., LLC v. Heimerl & Lammers, LLC*, No. 14-CV-846 SRN/BRT, 2015 WL 5602805, at *7 (D. Minn. Sept. 23, 2015) (quotation marks and citation omitted). It "neither informs a consumer about qualities, ingredients or characteristics" of plaintiff's products, "nor points to" those products' "intended purpose, function or intended use, size, or merit." *Id.* In short, a person who had never seen the term ONEPUL before would not immediately think of dog waste bags or the method of dispensing them.

Therefore, and consistent with what the USPTO has already determined, ONEPUL is inherently distinctive, and no showing of secondary meaning is required. The ONEPUL trademark is therefore not invalid for lack of distinctiveness. *See Park 'N Fly*, 469 U.S. at 205. Of course, contrary to plaintiff's suggestion, the validity of an inherently distinctive trademark is not equivalent to determining the scope of protection it affords, as discussed further below.

### (d) Fraud

In addition to proving that a contestable, registered trademark is invalid as generic or merely descriptive and without secondary meaning, *see id.* at 193–94, a defendant may also escape liability by proving one or more other available defenses. *See* 15 U.S.C. § 1115(b). As asserted by defendant here, one such

defense is to prove that "the registration or the incontestable right to use the mark was obtained fraudulently . . . ." *Id.* § 1115(b)(1). "Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application." *Fair Isaac*, 650 F.3d at 1148 (quotation marks and citation omitted). "Because direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence. But such evidence must still be clear and convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement." *Id.* (quotation marks, bracketing, and citation omitted). Further, the USPTO "has consistently held that a misstatement of the date of first use in an application for registration is not fraudulent as long as there has been some use of the mark prior to the filing date." *Aveda Corp. v. Evita Mktg., Inc.*, 706 F. Supp. 1419, 1426 (D. Minn. 1989) (citations omitted). Where a defendant has "failed to produce any evidence establishing a genuine issue of fact concerning a material misrepresentation which would be grounds for cancellation" of a plaintiff's registered trademark, summary judgment on a counterclaim for cancellation based on alleged fraud is required. *Id.*

Here, defendant argues that plaintiff committed fraud when it applied for the trademark over ONEPUL by falsely claiming it first used that mark in commerce on October 30, 2010. Defendant cites several discrepancies in addresses listed on plaintiff's invoices and contends that plaintiff only began using ONEPUL in 2012. Defendant did not introduce into evidence plaintiff's application to the USPTO, the most important evidence necessary to prove its counterclaim that plaintiff committed fraud on the application. Further, even if the application contains the wrong date, that raises no genuine dispute of material fact. The USPTO has long

interpreted errors in the alleged date of first use on trademark applications to be immaterial to the validity of a trademark's registration. *See id.* Defendant does not challenge the agency's determination on that question of administrative law, which the Court does not reach. Even if the application contains the error alleged, because it is not material, such an error cannot serve as a predicate for cancelling the mark on the basis that it was "obtained fraudulently." 15 U.S.C. § 1115(b)(1); *see Fair Isaac*, 650 F.3d at 1148. Therefore, the fraudulent registration counterclaim fails as a matter of law.

For those reasons, ONEPUL is both a valid and validly registered inherently distinctive trademark. Defendant has not succeeded on its counterclaim for invalidity, and plaintiff has established the first element of its prima facie case of trademark infringement.

### (2)  Defendant's Use of a Mark

The second element of plaintiff's prima facie case is disputed in part. The parties agree plaintiff has not authorized defendant to use any of its trademarks. *See* 15 U.S.C. § 1114(1); *B & B Hardware*, 569 F.3d at 389. However, the parties disagree about whether defendant's use of any iteration of the term "one pull" constitutes its use of "a mark," or only the good-faith use of generic or merely descriptive terms for its dog waste disposal bags. *See* 15 U.S.C. § 1115(b)(4) (setting out the affirmative defense of fair use). In any event, because the likelihood of confusion analysis is dispositive, the Court will assume *arguendo* that at least one of the defendant's uses of "one pull" may qualify as use of "a mark," and the Court also will not address the other elements of the fair use affirmative defense.

### (3)  Likelihood of Confusion

"[T]he burden of proving likelihood of confusion rests with the plaintiff . . . ."
*KP Permanent Make-Up*, 543 U.S. at 121. To succeed on the "likelihood of confusion" element, a plaintiff must prove that the defendant's alleged infringing mark "is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." *Id.* at 117. "Confusion means more than that the junior user's mark merely calls to mind the senior user's mark. . . . While the junior user's mark may call to mind the senior user's famous mark, this alone is not sufficient for a likelihood of confusion." *Frosty Treats*, 426 F.3d at 1010 (quotation marks and citation omitted). The "relevant inquiry" is "whether consumers are confused as to the existence of any sponsorship of or affiliation or association with the" defendant's products by the plaintiff. *Id.*; *see Lovely Skin*, 745 F.3d at 887(citing 15 U.S.C. § 1114(1)(A), and *Sensient Techs.*, 613 F.3d at 763 n.3, and holding that to prove trademark infringement or unfair competition requires a plaintiff demonstrate, *inter alia*, "that a likelihood of confusion exists between" the plaintiff's trademark and the defendant's usage).[5] Further, the Lanham Act was not "meant to deprive commercial speakers of the ordinary utility of descriptive words. If any confusion results, that is a risk the plaintiff accept[s] when it decide[s] to

---

[5]Plaintiff also raises a putative claim of "initial interest confusion," a subspecies of trademark infringement that the Eighth Circuit has neither accepted nor rejected. *See Sensient Techs.*, 613 F.3d at 766 (declining to "adopt the 'initial interest confusion' doctrine" because "it would not apply" in that case even if it were accepted "in this circuit," and recognizing that in circuits that have accepted the doctrine, a plaintiff still must prove initial interest confusion with evidence). Even if that type of infringement claim were cognizable in this circuit, it would not aid plaintiff here. A claim of initial interest confusion requires sufficient evidence to survive summary judgment, like any other infringement claim. *See id.* Plaintiff has introduced no evidence from which a reasonable jury could determine "confusion" caused by defendant's specific use of "one pull" (as opposed to its entry into the market and its legitimate business practices) likely "create[d] an initial customer interest" in defendant's dog waste disposal bags. *Id.*; *see 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1243–45 (10th Cir. 2013) (discussing the data and other evidence presented that there was a likelihood of actual initial interest confusion and concluding summary judgment was not granted in error, where the evidence left no genuine dispute of material fact that such confusion was unlikely).

identify its product with a mark that uses a well known descriptive phrase." *KP Permanent Make-Up*, 543 U.S. at 122 (quotation marks and citation omitted).

"[L]ikelihood of confusion is a factual question." *ConAgra, Inc. v. George A. Hormel, & Co.*, 990 F.2d 368, 371 (8th Cir. 1993). "When, as in this case, a trademark dispute centers on the proper interpretation to be given to the facts, rather than on the facts themselves, summary disposition is appropriate." *Duluth News-Tribune*, 84 F.3d at 1099. "To show a likelihood of confusion," a plaintiff "must show a probability of confusion, not merely a possibility." *Lovely Skin*, 745 F.3d at 887. "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Sensient Techs.*, 613 F.3d at 762 (quotation marks and citation omitted). Members of the industry are "not members of the purchasing public," and a plaintiff may not rely on "secondhand testimony—persons testifying to the alleged confusion of third parties"—as "proof of the existence of a likelihood of confusion." *WSM*, 724 F.2d at 1330, 1332 n.3.

"The Eighth Circuit applies a six-factor test to determine whether there is a likelihood of confusion, no part of which is dispositive standing alone." *Sensient Techs.*, 613 F.3d at 763 (citing *Frosty Treats*, 426 F.3d at 1008). Those six factors are:

> (1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to 'pass off' its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) the type of product, its cost, and conditions of purchase.

*Id.* "The relative weight of the factors depends on the facts of the individual case."

*Lovely Skin*, 745 F.3d at 887 (quotation marks, bracketing, and citations omitted). The "factors do not operate in a mathematically precise formula," and courts "use them at the summary judgment stage as a guide to determine whether a reasonable jury could find a likelihood of confusion." *Frosty Treats*, 426 F.3d at 1008 (quoting *Duluth News-Tribune*, 84 F.3d at 1096). "Factual disputes regarding a single factor are insufficient" to deny "summary judgment unless they tilt the entire balance in favor of such a finding." *Id.* (quoting *Duluth News-Tribune*, 84 F.3d at 1096). Accordingly, the Court applies each factor in turn.

### (a) Strength

"Two relevant measurements of a mark's strength are its conceptual strength and its commercial strength." *Lovely Skin*, 745 F.3d at 888 (citation omitted). "Whether a mark is federally registered does not bear on a mark's strength or affect the likelihood of confusion analysis." *Id.* at 887 (citations omitted). A plaintiff may establish a mark's strength by "direct evidence," such as with "consumer surveys or consumer testimony," and advertising expenses and sales figures must be sufficiently tied to the trademark in question. *Id.* at 888 (holding a district court did not err in its consideration of detailed evidence submitted of the plaintiff's advertising expenditures and revenues over time). Further, "evidence of third party usage of similar marks on similar goods is admissible . . . and relevant to show that the mark is relatively weak and entitled to a narrower scope of protection." *Gen. Mills*, 824 F.2d at 626–27 (holding a district court did not clearly err when it recognized "component words" that are "in common usage and function to describe the ingredients and nature of the product" are "highly descriptive," and found the term "APPLE RAISIN CRISP" merely descriptive and without secondary meaning).

Plaintiff submitted no evidence that bears on ONEPUL's commercial or conceptual strength other than the fact of the mark's registration, which is irrelevant. *See Lovely Skin*, 745 F.3d at 887 (citations omitted). No consumer surveys were introduced. Plaintiff also did not offer consumer declarations, affidavits, or deposition testimony to demonstrate a genuine factual dispute that would preclude summary judgment. The only statements of record are those from plaintiff and its counsel, neither of which prove consumer perception.

Even assuming plaintiff spent over $1.5 million advertising the ONEPUL trademark since 2010, without comparators, that also is irrelevant. On this record, a factfinder would have no evidence about ONEPUL's relative position in the market, or whether $1.5 million in advertising expenses over five years is significant or insignificant in the pet waste disposal bag industry. The amount of money a company spends advertising a product is not by itself reliable evidence that consumers are actually purchasing the product, let alone in mass quantities.

Plaintiff also submitted unverified balance sheets for its sales of ONEPUL and SINGLPUL bags. Assuming the details are accurate, plaintiff made $5.5 million from sales of both products from August 2010 through August 2015, of which only approximately $850,000 was generated from ONEPUL bag sales. Out of the 50,119 boxes and cases sold in five years, only 12,215 of them contained ONEPUL bags, under 25%. That evidence tends to undermine any claim that the ONEPUL mark is strong, even relative to plaintiff's other branded bags. The sales numbers also tell very little without comparator data. Absent is evidence of what any other company spends on advertising or generates in revenue from selling dog waste disposal bags. Without such evidence, a factfinder would be left with only plaintiff and its counsel's word that ONEPUL is a strong mark.

Finally, third parties sell dog waste disposal bags with "one-pull" features. Plaintiff suggests the evidence is irrelevant because those third-parties sell "one pull" roll bags, not wicket bags. But that actually undercuts its argument. If ONEPUL and the use of "one pull" on dog waste disposal bags is "identical," as plaintiff contends (which is far from evident, as discussed below), then the use of "one pull" on roll bags only serves to underscore that the ONEPUL mark is weak. If plaintiff's proposition is accepted, it means ONEPUL is only weakly associated with its particular brand of wicket bags, because third parties are selling roll bags under the "identical" moniker. At minimum, that third parties sell "one pull" roll bags leaves no doubt the ONEPUL mark is "entitled to a narrower scope of protection," suggesting it cannot cover defendant's use. *Gen. Mills*, 824 F.2d at 626–27.

### (b) Similarity

"[W]hen 'products are closely related, less similarity in trademarks is necessary to support a finding of infringement.'" *ConAgra*, 990 F.2d at 371 (quoting *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980)). But "otherwise similar marks are not likely to be confused when used in conjunction with" the "clearly displayed name of" the seller. *Duluth News-Tribune*, 84 F.3d at 1097 (citing *Pignons S.A. de Mecanique v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981)). A court analyzing the similarity of two marks is to "evaluate the impression that each mark in its entirety is likely to have on a purchaser exercising the attention usually given by purchasers of such products." *Id.* Courts "consider the marks' visual, aural, and definitional attributes and compare the trade dress of the products in determining whether the total effect conveyed by the two marks is confusingly similar." *Sensient Techs.*, 613 F.3d at 764 (quotation marks and citations omitted). The "use of identical dominant words does not automatically

equate to similarity between marks." *Id.* at 765 (quoting *Gen. Mills*, 824 F.2d at 627).

Where even identical "features are components of longer product names with different auditory and visual depictions," confusion is less likely. *Id.*; *see KP Permanent Make-Up*, 543 U.S. at 114 (discussing the parties' use of the term "microcolor" as "one word or two, singular or plural"). The "prominent display of" a company's "house marks" with a product also reduces the likelihood of confusion. *Sensient Techs.*, 613 F.3d at 765 (quotation marks and citation omitted). In cases where "the point of contact between the companies and the customers generally occurs via telephone," the "auditory similarities should be given priority" over the visual differences, but the question is whether the "composite marks maintain a distinct auditory difference." *Id.*

The evidence of record seriously undercuts any similarity that may exist between the marks. First, defendant sells its products only online and by phone. Its website prominently and repeatedly displays its BagSpot house mark, greatly reducing the risk that a consumer stumbling upon the website will mistake the products sold there for plaintiff's ONEPUL bags. Even a consumer who viewed one of defendant's advertisements likely would not mistake the product in question, because to purchase it would require the affirmative act of visiting defendant's website, with all its clear indicia that the products originate from BagSpot. And even a consumer merely viewing the advertisement would see defendant's website displayed with the advertisement, showing the marketer is defendant, not plaintiff.

Second, defendant uses its BagSpot® trademark in conjunction with "One Pull" and "One-Pull" in several places on its website, reducing the likelihood that consumers viewing that website as a whole will mistakenly purchase defendant's

bags believing they are ONEPUL bags from plaintiff. A consumer also is unlikely to purchase defendant's bags by phone all the while thinking she or he has called plaintiff, where the sources from which the consumer obtains defendant's phone number also refer to BagSpot—*i.e.,* its website, its advertisements, or its bags. Plaintiff introduced no evidence of deceptive phone practices, and nothing in the record suggests that defendant does not clearly identify itself as BagSpot on the phone.

Third, it is undisputed that defendant's bags are not actually branded with any variant of the term "one pull." They are instead clearly labelled BagSpot® bags, with defendant's phone number and website address prominently displayed. Even the unwitting consumer who happened to see a "one pull" bag out in the world—*e.g.*, in a dispenser at a dog park—would not be left with any mistaken impression the product is one of plaintiff's ONEPUL bags.

Finally, viewed in their entirety the two marks are not "identical," as plaintiff suggests. Plaintiff offered no audiologist, linguist, semiologist, or market research expert, or other evidence, from which to determine the overall impression and total effect the two marks would have on purchasers. Plaintiff also did not put forth evidence as to the degree of attention usually given to purchasing dog waste disposal bags from which to make such a determination.

Regardless, the closest the two marks have appeared to resembling one another was in an advertisement (on defendant's website) where the entire product title was capitalized: "ONE-PULL BAGS." But even that example shows that the separate (or hyphenated) term "ONE PULL" is visually distinct from the single word, misspelled term ONEPUL or ONEPul. The BagSpot trade dress accompanying the use of the term across defendant's website and its advertisements only further

serves to distinguish even the most similar instance of the two marks, while many others bear almost no resemblance to one another, *i.e.*, "one pull" versus ONEPul.

Nor is there evidence of record that consumers are likely to assign the same meaning to ONEPUL as "one pull," or that they will pronounce the single, misspelled term the same as the two English words from which it appears to have been derived. *Cf. Aveda*, 706 F. Supp. at 1429 (recognizing auditory similarities between two marks at summary judgment where the plaintiff had linguistic expert evidence that the marks were pronounced similarly). But even assuming *arguendo* the terms actually sound the same and would be interpreted by purchasers to mean the same thing, that is still insufficient to withstand summary judgment. All of the factors discussed above show the terms are markedly dissimilar as they are used in the real world, to advertise distinct products, on separate websites, prominently branded to identify different dog waste disposal bag distributors.

### (c) Competition

Where there is a high degree of competition among the companies' products or services, confusion is also more likely where the products are closely related. *Sensient Techs.*, 613 F.3d at 766. Confusion is more likely to arise where an alleged infringer "utilizes identical or substantially similar marks while offering the same category of services in the same geographical location" as the trademark owner. *Devon Park*, 634 F.3d at 1009.

Plaintiff and defendant compete with each other in the dog waste disposal bag market. As discussed, however, ONEPUL is not as closely related to "one pull" as plaintiff suggests, such that the marks are neither identical nor substantially similar. This is particularly true when one considers the context in which both

27

marks appear, on different websites and surrounded by trade dress that distinguishes them. But confusion may be more likely because defendant offers putative customers the same wicket-type dog waste disposal bags as plaintiff, and at least in some of the same geographic areas, *i.e.*, to municipalities in Missouri. Therefore, the parties' competitive status renders confusion more likely. Of course, that this single factor makes confusion more likely is insufficient to forestall summary judgment where the evidence relevant to other factors shows no reasonable jury could conclude it is likely that consumers will be confused. *See Lovely Skin*, 745 F.3d at 887; *Frosty Treats*, 426 F.3d at 1008.

### (d) Intent

The question of intent with regard to trademark infringement is "whether the alleged infringer intended to pass off its goods as the trademark owner's goods." *Sensient Techs.*, 613 F.3d at 766. A defendant's intent may be shown by circumstantial evidence. *See Anheuser–Busch, Inc. v. Balducci Pubs.*, 28 F.3d 769, 774 (8th Cir. 1994). Though evidence of intent raises an inference of a likelihood of confusion, a plaintiff need not present proof of bad intent to succeed on an infringement claim. *SquirtCo.*, 628 F.2d at 1091. The absence of evidence of bad intent is also considered. *Sensient Techs.*, 613 F.3d at 766.

Further, and critically here, proof of a defendant's predatory intent must be based on more than mere knowledge of a plaintiff's product and desire to enter the market and compete with that product. *Id.* at 766–67. "Knowledge of another's product and an intent to compete with that product is not . . . equivalent to an intent by a new entrant to a market to mislead and to cause consumer confusion" between those products. *Id.* at 766 (quotation marks and citation omitted). Even if a defendant knew of and sought to compete with a plaintiff's product before

adopting its allegedly infringing mark, that knowledge and intent is only "speculation" as to the likelihood that consumers will confuse the parties' products. *Id.* at 767. Such knowledge and intent is not sufficient evidence of "intent to confuse customers by using a name similar to" that of the plaintiff's product. *Id.*

As putative evidence of intent to infringe on the ONEPUL mark, plaintiff first suggests that defendant's principals were aware of the ONEPUL trademark, aware of its registration, and aware that plaintiff advertised its bags using that mark. Defendant disagrees for reasons not relevant here. Crediting plaintiff's version of the events, *see AgriStor Leasing*, 826 F.2d at 734, defendant's knowledge of plaintiff's business and ONEPUL trademark and its desire to enter the market and compete with plaintiff is still no evidence of an intent to confuse consumers regarding the ONEPUL bags. *See Sensient Techs.*, 613 F.3d at 766. Even if plaintiff is correct that defendant entered the dog waste disposal industry with the intent of competing with plaintiff's business—*i.e.*, to engage in a capitalist enterprise—that is not the equivalent of an intent to dupe consumers into believing its bags are ONEPUL bags. *See id.*

The second argument plaintiff raises with regard to intent relates to defendant's purchase of keywords and advertisements from Google. But what is true of defendant's knowledge of the products is also true of its marketing practices, including its purchase of keywords and advertisements. Assuming those allegations are true, it may be strong evidence of a desire to compete with plaintiff in the marketplace. But it is no evidence of unfair competition or intent to infringe. Plaintiff has offered no evidence that defendant has done anything more than advertise its own products to potential consumers who are shopping for dog waste disposal bags online. Advertising its own products to those consumers is not,

without more, evidence from which a reasonable jury could conclude defendant hoped to confuse customers into believing its bags were ONEPUL bags.

Plaintiff additionally, points out that it has lost several customers to defendant. The evidence suggests that there are municipalities that switched from purchasing plaintiff's products to defendant's products. However, plaintiff does not suggest that the municipalities switched their dog waste bag providers after having actually been exposed to defendant's marketing materials, let alone that defendant's use of "one pull" was the cause or even a contributor to the decisions to change bag providers. That evidence shows only that defendant competes with plaintiff for customers in the dog waste disposal bag market and that in at least some instances defendant has successfully convinced customers to purchase its products instead. As with defendant's online advertising practices, its competition for customers without evidence those customers were affected by the "one pull" mark does not prove intent.

Finally, plaintiff suggests that defendant's selection of "one pull" or "One Pull" to describe its products is evidence of intent to pass off its bags as plaintiff's ONEPUL bags, contending the marks are "identical" or nearly so. As discussed above, however, the marks are in fact dissimilar. Even if that were not so, plaintiff's point is undercut by third-parties' use of the same terms in the industry. Other dog waste disposal bag merchants sell "one-pull" and "one pull" bags and variously capitalize or emphasize those terms depending on the advertisement in question. Plaintiff also uses the term "ONE-PULL" on its own website to describe features of dog waste disposal bags, separate from its specific references to ONEPUL bags. No genuine dispute of fact exists that "one pull" is a commonplace descriptor for dog waste disposal bags that can be dispensed with a single pull of

the hand, a feature common among certain classes of roll bags and wicket bags, and commonly advertised in the industry. Plaintiff therefore has not shown on this evidence that defendant sought to use "One Pull" with the intent to confuse consumers that they were purchasing ONEPUL bags.

### (e) Actual Confusion

Evidence of incidents of actual confusion is useful to show the likelihood that consumers will be confused by two products. *See id.* at 768. But a "plaintiff is not required to bring forth incidents of actual confusion to succeed in an infringement case." *Id.* (citation omitted). "In analyzing this factor, weight is given to the number and extent of instances of actual confusion." *Id.* (quotation marks and citation omitted). Though "evidence of actual confusion may be the best evidence of likelihood of confusion," even evidence of "a few instances" of actual confusion "is not conclusive of" the existence of a likelihood that consumers would "be confused as to the source" of the product, the "core element" of trademark infringement. *Davis v. Walt Disney Co.*, 430 F.3d 901, 905 (8th Cir. 2005) (quotation marks and citations omitted); *see Duluth News-Tribune*, 84 F.3d at 1098–99 (holding that "even several isolated incidents of actual confusion" are insufficient to support a finding of likelihood of confusion).

Plaintiff admits it has no evidence of any incidents of consumers actually having been confused into believing defendant's bags are ONEPUL bags. Though this is not dispositive, the absence of such evidence of record only further undermines plaintiff's supposition that it is likely consumers will be so confused.

### (f) Type, Cost, and Conditions of Purchase

Finally, courts consider "the kind of product, its costs and the conditions of purchase," which "are important factors in considering whether the degree of care

exercised by the purchaser can eliminate the likelihood of confusion which would otherwise exists." *Lovely Skin*, 745 F.3d at 889 (citation omitted). "In considering this factor," courts "must stand in the shoes of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *Sensient Techs.*, 613 F.3d at 769 (quotation marks and citation omitted). Where products are expensive, consumers are likely to exercise greater care in making purchases, thus reducing the likelihood of confusion. *See Lovely Skin*, 745 F.3d at 889. Similarly, where products are sold to "sophisticated customers after a collaborative process," the likelihood of confusion tends to be mitigated. *Sensient Techs.*, 613 F.3d at 769. But even where consumers are "unlikely to exercise significant care in their purchasing decisions, this fact alone cannot tilt the balance . . . regarding the likelihood of confusion." *Frosty Treats*, 426 F.3d at 1010 (citation omitted). The "reality of" a "defendant['s] distribution methods" is also relevant, even where "ordinary buyers will exercise only minimal care in selecting" a product. *Duluth News-Tribune*, 84 F.3d at 1099. Where a defendant's "distribution methods ensure that the vast majority of ordinary purchasers will not be confused, . . . no factual dispute exists the resolution of which would allow a reasonable jury to find a likelihood of confusion." *Id.*

Scant evidence here details the conditions in which various commercial consumers and individual dog owners typically purchase dog waste disposal bags. Drawing all reasonable inferences in plaintiff's favor, consumers do not typically exercise a high degree of care when selecting moderately priced boxes or cases of dog waste disposal bags online or by phone. The bags appear to retail for approximately $0.05 each, and are typically sold in boxes of several hundred or

cases of up to 2,000 bags.  The overall purchase price is usually less than $100.00.

It is therefore reasonable to presume that consumers are more likely to be

confused by products in the dog waste disposal bag market because the products

are inexpensive.  The same can be said for the type of product, as no evidence

shows consumers are unusually cautious and discerning when selecting a dog waste

disposal bag or bag supplier.

However, undercutting that evidence are the defendant's online and phone

distribution methods as discussed above.  Both parties sell their wares online.

Defendant's website and all of plaintiff's websites contain highly specialized trade

dress, different color schemes and fonts, different phone numbers, and different

logos.  No reasonable jury examining that evidence could find that customers—even

careless ones—would strain to recognize that they are purchasing BagSpot One Pull

Bags from BagSpot rather than ONEPUL bags from Zero Waste USA.  Consequently,

there is no genuine dispute of material fact in this instance that ordinary purchasers

of the parties' bags would notice the distinction between them.

### C.  State Law Claims

Defendant also moves for summary judgment on plaintiff's Missouri common

law trademark infringement and unfair competition claims, and its anti-dilution

statutory claim under Mo. Rev. Stat. § 417.061.  Plaintiff appears to concede that

the same elements that comprise its federal trademark infringement claims also

govern all of its Missouri law claims; they rise or fall together.  *See* [Doc. #82 at

11] Regardless, plaintiff's Missouri common law claims for trademark infringement

and unfair competition would be subject to summary judgment on the basis of the

same dearth of evidence that forecloses success on its federal trademark

infringement claims.  *See Devon Park*, 634 F.3d at 1010 ("Missouri law is well

settled that the same facts which support a suit for trademark infringement support a suit for unfair competition and common law infringement." (quotation marks and citations omitted)); *Heaton Distrib. Co. v. Union Tank Car Co.*, 387 F.2d 477, 483 (8th Cir. 1967) ("Trademark infringement is but a part of the broader law of unfair competition, and facts supporting a suit for infringement and one for unfair competition are substantially identical." (citations omitted)).

With respect to the dilution claim, plaintiff has offered no evidence that its ONEPUL trademark is famous or that the dog waste disposal bags at issue are dissimilar classes of products, both of which are requisite elements of the claim. *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 833 (8th Cir. 1999) (explaining that "[d]ilution occurs when consumers associate a famous mark with a new product," that "[n]ormally, the doctrine applies in cases where similar marks are used on dissimilar goods," and holding that a dilution claim was not viable where both the plaintiff and defendant were marketing the same types of goods, "low-fat frozen entrees"). Further, though a dilution claim does not require showing a likelihood of confusion, the same dissimilarities in sight, sound, and meaning that undercut plaintiff's infringement claim also foreclose success on its dilution claim. *See Sensient Techs.*, 613 F.3d at 769–71 & n.3 (explaining that likelihood of confusion is a prerequisite to success on Missouri common law trademark infringement and unfair competition claims, and that a plaintiff's anti-dilution claim, *see* Mo. Rev. Stat. § 417.061, also fails where the marks in question are dissimilar, as demonstrated by, *inter alia*, differences in sight, sound, and meaning); *Steak n Shake Co. v. Burger King Corp.*, 323 F. Supp. 2d 983, 986–92 (E.D. Mo. 2004).

## IV. CONCLUSION

As discussed above, plaintiff has not submitted evidence establishing a genuine

dispute of material fact from which a reasonable jury could conclude that there is a likelihood of consumer confusion between its ONEPUL trademark and defendant's various uses of the term "one pull."  The Court therefore does not address defendant's additional counterclaims or defenses.  *See Masters v. UHS of Del., Inc.*, 631 F.3d 464, 469 (8th Cir. 2011) (discussing remedies available under the Lanham Act and the acquiescence, estoppel, and laches defenses).  Defendant is entitled to summary judgment on plaintiff's claim that defendant infringed the ONEPUL trademark.  Therefore, defendant's uses of "one pull," however capitalized or hyphenated, are non-infringing.

Similarly, plaintiff has not presented evidence to support its state law claims of infringement, unfair competition, and dilution.  Therefore, defendant is entitled to summary judgment on those claims.

* * * * *

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for partial summary judgment [Doc. #74] is **denied**.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment [Doc. #77] is **granted** as to plaintiff's claims.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment is **denied** as to its counterclaim for trademark invalidity regarding ONEPUL, and is **moot** as to its other counterclaims.

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of September, 2016.